UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA LOYLE,

         Plaintiff,

v.                              CASE NO.   8:08-CV-169-T-17AEP

MANTUA MANUFACTURING
COMPANY,

         Defendant.

_____/


                          ORDER

     This cause is before the Court on:


     Dkt. 18    Motion for Summary Judgment
     Dkt. 19    Deposition - Loyle
     Dkt. 20    Deposition - Bosler
     Dkt. 21    Deposition - Weintraub
     Dkt. 22    Deposition - Dubecky
     Dkt. 23    Deposition - Keller
     Dkt. 24    Affidavit - Dubecky
     Dkt. 25    Affidavit - Weekley
     Dkt. 26    Affidavit - Boles
     Dkt. 36    Memorandum in Opposition
     Dkt. 37    Notice - Affidavit - Miller
     Dkt. 38    Notice - Declaration - Boles Rimer
     Dkt. 39    Notice - Exhibits - Dubecky
     Dkt. 40    Notice - Exhibits - Bosler
     Dkt. 41    Notice - Exhibits - Weintraub
     Dkt. 42    Notice - Exhibit - Loyle


     The Complaint in this case is a claim for age discrimination
in violation of Ch. 760, Florida Statutes.  The basis of
jurisdiction is diversity.

Defendant Mantua Manufacturing Company moves for entry of summary judgment in favor of Defendant because Defendant Mantua had legitimate non-discriminatory reasons for Plaintiff's termination in January, 2006, and Plaintiff cannot show that Defendant's legitimate reasons were pretextual.

I.  Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is

2

not significantly probative...summary judgment may be granted."
Id. at 249-50.

II.  Statement of Facts

For purposes of determining the Motion for Summary Judgment,
the Court has considered the following undisputed facts:

1.  Plaintiff Sandra Loyle was born in 1941.  Plaintiff
Loyle began working for Defendant Mantua Manufacturing Company on
November 11, 1996.

2.  Defendant Mantua Manufacturing Company is an Ohio
corporation doing business in Hillsborough County, Florida.
Defendant Mantua Manufacturing Company manufactures bed frames,
and has in excess of 100 employees.

3.  The Employment Handbook for Defendant Mantua
Manufacturing Company includes a progressive discipline policy
(Dkt. 33-2, pp. 27-29).  Section 7-2 states that "Mantua
Manufacturing Company reserves the right to terminate any
employee for a first, second or third offense."

4.  In his deposition, Edward Weintraub, CEO of Defendant
Mantua Manufacturing Company, testified that his involvement with
the hiring of personnel in Tampa was restricted to hiring the
plant manager.  Edward Weintraub further testified that the plant
manager is responsible for hiring, and, if needed, firing both
office and factory personnel.  (Weintraub Deposition, p. 9, ll.
9-17).

5.   Plaintiff Loyle's duties included answering the telephone, sales-order entry and freight-claim entry, printing bills of lading, invoicing, customer service, and some accounts receivable responsibilities (Loyle Deposition, p. 8, ll. 2-5).

6.   Before November, 2005, Defendant's Tampa office staff consisted of two people, Plaintiff Sandra Loyle and Annette Miller.   Annette Miller worked in the same office with Plaintiff Loyle.   In 2005, Annette Miller let it be known that she intended to retire in 2006.   (Dkt. 37, Miller Affidavit).

7.   Michael Bosler was the Plant Manager for Defendant Mantua Manufacturing Company from 1986 through August, 2005. (Bosler Deposition, p. 37, ll. 17-19).   Michael Bosler testified that he verbally reprimanded Plaintiff Loyle for a disorganized desk, for filing that was not up-to-date, and for misplaced orders.   (Bosler Deposition, p. 40, ll. 2-17).

8.   In August, 2005, Frank Dubecky took over as Plant Manager for Defendant Mantua Manufacturing Company.   At that time, Frank Dubecky was 59 years old.

9.   Frank Dubecky did not have any experience with bed frame manufacturing (Dubecky Deposition, pp. 6-13).

10.   As Plant Manager, Frank Dubecky made changes to the production line to improve the efficiency of the plant. (Dubecky Deposition, p. 14, ll. 12-24).   Frank Dubecky also reviewed the performance of other personnel, including Annette Miller and Plaintiff Sandra Loyle. (Dubecky Deposition, pp. 25-27).

4

11.  Frank Dubecky testified that he counseled Plaintiff Sandra Loyle both verbally and in writing for issues such as the manner in which Plaintiff Loyle entered and stored orders, and the appearance of Plaintiff's desk. (Dubecky Deposition, pp. 33-34, p. 42, ll. 3-12).

12.  Plaintiff Loyle denied that Plaintiff Loyle was counseled for her work performance. (Loyle Deposition, p. 35, ll. 6-10).

13.  Defendant Mantua produced no written warnings from Plaintiff Loyle's personnel file.

14.  Frank Dubecky testified Plaintiff Loyle acknowledged to Plant Manager Dubecky that Plaintiff Loyle could use some help with her job duties. (Dubecky Affidavit, Dkt. 24).

15.  Plaintiff Loyle testified that she did not recall requesting additional help with the duties of her job, and testified she was having a difficult time keeping up with the work.  Plaintiff Loyle testified she did not know Frank Dubecky was going to hire Megan Boles until Megan Boles started to work (Loyle Deposition, p. 85, ll. 17-24 ).

16.  Megan Boles was hired in November, 2005.  In general, Megan Boles was hired to help out anybody in the office, and in particular to assist Plaintiff Loyle with filing and order entry. (Dubecky Deposition, p. 30, ll. 11-14).

17.  Ashley Keller was hired in December, 2005.  Ashley Keller testified that she was told she was hired to learn the

duties of Annette Miller's position, as Annette Miller would be retiring in 2006. (Keller Deposition, p. 10, ll. 3-7).

18. Ashley Keller testified that Annette Miller often criticized Plaintiff Loyle in a mean way (Keller Deposition, p. 46, ll. 10-25, p. 50, ll. 3-15). Ashley Keller further testified that Plaintiff Loyle did all the work, and Annette Miller did very little, but Annette Miller never assisted Plaintiff Loyle. (Keller Deposition, p. 75, l. 6-25, p. 76, l. 1).

19. Edward Weintraub testified that he received telephone calls from customers complaining about slow delivery. (Weintraub Deposition, p. 16, ll. 23-25, p. 17, ll. 1-2).

20. Mr. Weintraub testified that Frank Dubecky first expressed disappointment with the work performance of Plaintiff Loyle in October, 2005. (Weintraub Deposition, p. 25, ll. 11-25). At the same time, Frank Dubecky expressed concern with Annette Miller's "crusty personality." (Weintraub Deposition, p. 25, ll. 24-25; p. 26, ll. 1-14). Mr. Weintraub further testified that Annette Miller's personality was known and accepted by Defendant Mantua. (Weintraub Deposition, p. 27, ll. 4-9).

21. Edward Weintraub testified it was apparent that Plaintiff Loyle and Annette Miller did not like each other. (Weintraub Deposition, p. 51, ll. 14-20).

22. Edward Weintraub testified that he suggested to Frank Dubecky that Mr. Dubecky look into hiring additional personnel to assist Plaintiff Loyle and to eventually replace Annette Miller (Weintraub Deposition, p. 28, ll. 19-25; p. 29, ll. 1-3). Edward

Weintraub further testified that Frank Dubecky inquired as to the possibility of hiring additional personnel in November, 2005, before Mr. Weintraub suggested it. (Weintraub Deposition, p. 29, ll. 7-10).

23.  Edward Weintraub testified that there were periodic conversations in which Frank Dubecky expressed concern about the work performance of Plaintiff Loyle and Annette Miller (Weintraub Deposition, p. 30, ll. 18-25; p. 31, ll. 1-6).

24.  Edward Weintraub testified that he had no direct involvement in the hiring of Megan Boles and Ashley Keller; the hiring decisions were made by Frank Dubecky, and were within the duties delegated to Frank Dubecky. (Weintraub Deposition, p. 33, ll. 13-23).

25.  Edward Weintraub testified that he had a conversation with Annette Miller in December, 2005, in which he expressed disappointment in Annette Miller's attitude, her approach towards Frank Dubecky, and her hostility and anger in training Ashley Keller and Megan Boles. (Weintraub Deposition, p. 49, ll. 7-7-25, p. 50, ll. 1-8).

26.  Plaintiff Loyle took some time off from work in December, 2005, due to vacation and a knee injury.

27.  In her deposition, Ashley Keller testified that, during Plaintiff Loyle's absence, Ashley Keller discovered orders that Plaintiff Loyle had not entered, and which appeared to be overdue.  Ashley Keller testified that she informed Frank Dubecky of the orders. (Keller Deposition, pp. 36-37, ll. 12-20, ll. 7-

22; pp. 41-42, ll. 17-25, ll. 1-22).

28.    In December, 2005, Frank Dubecky discovered a large
container order which was scheduled to be shipped overseas that
Plaintiff Loyle had not entered. (Dubecky Deposition, p. 47-48,
ll. 16-24, l. 2).

29.    Frank Dubecky recommended to Edward Weintraub that
Plaintiff Loyle's employment be terminated, and Edward Weintraub
approved the recommendation on January 8, 2006 (Weintraub
Deposition, pp. 36-7, ll. 7-12, 15-25, l. 1).   Edward Weintraub
confirmed the facts of Frank Dubecky's "final straw" complaint
with Megan Boles before approving termination (Weintraub
Deposition, pp. 38-39, ll. 18-25, ll. 1-22).

30.    Plaintiff Loyle testified that Plaintiff Loyle was
informed of her termination on January 9, 2006, although the
official date is January 6, 2006.   (Loyle Deposition, p. 15, ll.
13-15).

31.    Frank Dubecky stated that he told Plaintiff Loyle that
Defendant Mantua could not continue to employ her because
Plaintiff Loyle was habitually behind in order entry (Dubecky
Affidavit, Par. 12).

32.    Plaintiff Loyle sent a letter to Chief Financial
Officer Jeff Weekly dated January 22, 2006. (Dkt. 25, Exhibit A),
which discussed changes in Plaintiff's workplace, including new
products, new customers, high demand for products, inventory
shortages, new personnel and an increased workload for Plaintiff.
As to Plaintiff Loyle's increased workload, Plaintiff Loyle

stated:

> "Along with these changes came increased
> workloads, especially for me. For several
> months, I had worked really hard to keep up
> or at least maintain. I stayed after work,
> took shorter and shorter lunch breaks,
> delayed and postponed medical appointments,
> vacation days, even took work home.
> Obviously I was unable to keep up or
> maintain. And who was available to help?
> Annette? Not an option. Two brand new girls
> who hadn't even learned the business yet? I
> don't think so."

33. Edward Weintraub testified that Frank Dubecky telephoned him in January, 2006 to inform him that Annette Miller's attitude had not changed, and that Annette Miller had told Ashley Keller "why would you want to come to work here because the company was quote "messed up." Edward Weintraub testified that he confirmed this with Ashley Keller, and considered this expression to be the "last straw." (Weintraub Deposition, p. 55, ll. 12-25).

34. Annette Miller's employment was terminated on February 19, 2006. (Bosler Deposition, p. 32, ll. 3-6).

35. Edward Weintraub testified that Annette Miller was fired because of her attitude. (Weintraub Deposition, p. 60, ll. 9-17).

36. On June 23, 2006, Plaintiff Loyle filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was a joint filing with the Florida Commission on Human Relations, stating that Plaintiff Loyle believed Defendant

discriminated against Plaintiff Loyle due to her age, in violation of the Age Discrimination in Employment Act. (Charge, Dkt. 1-2). The EEOC and FCHR did not issue a letter of determination within six months of the Charge.

37. On June 27, 2006, Ashley Keller sent an e-mail to Edward Weintraub in which Ashley Keller informed Edward Weintraub of her complaints as to the conduct of Frank Dubecky (Dkt. 39, pp. 3-4).

38. On December 28, 2007, Plaintiff Loyle filed her Complaint in Hillsborough County Circuit Court, and the case was removed to this Court on January 24, 2008.

39. In her deposition, Plaintiff Loyle testified that Frank Dubecky discriminated against Plaintiff Loyle by firing Plaintiff Loyle for undue cause. (Loyle Deposition, p. 7, l. 13).

40. Plaintiff Loyle further testified that she heard Frank Dubecky make the comment that "[Y]oung people were generally sharper; older workers had too many aches and pains." (Loyle Deposition, p. 57, ll. 3-4).

41. In her deposition, Plaintiff Loyle testified that the large export order for Puerto Rico was not entered because Plaintiff Loyle was awaiting information necessary to process the order. (Loyle Deposition, pp. 78-79, ll. 1-25, 1-12).

42. Megan Boles provided an affidavit to the EEOC which supported Defendant Mantua's version of why Plaintiff Loyle's employment was terminated, i.e. poor work performance. Megan

Boles states in the affidavit that Plaintiff Loyle was discharged because she could not keep up with the duties of her job. The affidavit is notarized on September 26, 2006 (Boles Affidavit, Dkt. 17-9).

43. Megan Boles also provided a declaration dated December 1, 2008, pursuant to 28 U.S.C. Sec. 1746, in which she states that Plaintiff Loyle performed her job about the same from the time Megan Boles was hired until Plaintiff Loyle's termination.

III. Discussion

A. FCRA Discrimination Claim

State law age discrimination claims are analyzed under the same analytical framework as federal ADEA/Title VII claims. See Bogle v. Orange County Bd. Of County Commissioners, 162 F.3d 653, 659 n.9 (11th Cir. 1998).

A claim for intentional discrimination may be established through direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. Bass v. Board of County Commissioners, Orange County, Fla., 256 F.3d 1095, 1103 (11th Cir. 2001). Statistical evidence may also be used, but no statistical evidence was offered in this case.

"A claim based purely on circumstantial, or indirect, evidence of discrimination requires the plaintiff first to establish a prima facie case of discrimination according to the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792

11

(1973) and Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). However, in cases of discrimination proven by direct evidence, it is incorrect to rely on the McDonnell Douglas test because, while circumstantial evidence is used to create an inference of discrimination under McDonnell Douglas, no such inference is required in the case of direct evidence." Bass, 256 F.3d at 1104. The McDonnell Douglas analysis applies to ADEA claims based on circumstantial evidence. Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990).

In cases brought under the Age Discrimination in Employment Act, the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate...employment. See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982).

1. Direct Evidence

"For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." Bass, 256 F.3d at 1105. "Remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Id.

The Court has considered the pleadings, deposition testimony and affidavits in this case. The Court notes that Plaintiff Loyle testified that Plant Manager Frank Dubecky never made any age-related comments to her. (Loyle Deposition, p. 24, ll. 20-22 ). Plaintiff Loyle testified that Plant Manager Dubecky did make comments such as "Younger people were generally sharper. Older

workers had too many aches and pains."(Loyle Deposition, p. 57, ll. 2-7). Plaintiff Loyle did not recall whether the comments were made on more than one occasion, when the comments were made or to whom they were directed. (Loyle Deposition, p. 57, ll. 5-17).

After consideration, the Court finds that above age-related remarks standing alone do not amount to direct evidence of age discrimination. The above comment is expressed in general terms. There is no evidence that any other decision-maker made age-related comments to Plaintiff. The Court concludes that Plaintiff cannot offer direct evidence of discrimination.

B. Statistical Proof

Plaintiff Loyle has not offered statistical evidence of intentional discrimination.

C. Circumstantial Evidence

1. Prima Facie Case

To recover under the FCRA using circumstantial evidence, Plaintiff must first establish a prima facie case of age discrimination. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions. McDonnell-Douglas, 411 U.S. at 802. Once the employer articulates a legitimate non-discriminatory reason for its actions, the presumption of discrimination disappears, and the plaintiff must come forward with evidence to show that the

13

employer's proffered reasons are pretextual.    Plaintiff may
overcome a summary judgment motion by either "persuading the
court that a discriminatory motive more likely motivated the
employer, or indirectly by showing that the employer's proffered
explanation unworthy of credence." Even if Plaintiff demonstrates
that the employer's articulated non-discriminatory reason is
false, Plaintiff must still prove that her adverse employment
action was truly based upon unlawful discrimination.   St. Mary's
Honor Center v. Hicks, 509 U.S. 502 (1993).


To establish a prima facie case of age discrimination, a
plaintiff must establish: 1) plaintiff was a member of an age
group protected by the ADEA at the time of her discharge; 2)
plaintiff was subjected to an adverse employment action; 3) a
substantially younger person filled the position from which the
plaintiff was discharged; and 4)plaintiff was qualified to do the
job from which she was discharged.   Damon v. Fleming Supermarkets
of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).   It may be
inferred that a plaintiff who has had a long tenure in the same
position is considered "qualified" to hold the position.   Clark
v. Coats & Clark, 990 F.2d 1217, 1227 (11th Cir. 1993).


In this case, Defendant Mantua Manufacturing Company
concedes that Plaintiff can establish a prima facie case.


2.  Legitimate Non-Discriminatory Reasons


Defendant Mantua Manufacturing Company argues that Plaintiff
Loyle's employment was terminated due to unsatisfactory job
performance.


14

Defendant Mantua argues that five witnesses testified that Plaintiff Loyle's job performance was deteriorating, and Plaintiff Loyle was unable to handle stress or change. Defendant Mantua further argues that Plant Manager Dubecky was struggling to establish himself as the Plant Manager, and could not assist Plaintiff Loyle in the performance of the duties of her job, as the previous Plant Manager, Mike Bosler, had.

Plaintiff Loyle's letter of January 22, 2006 to Jeff Weekley (Dkt. 25) analyzes Plaintiff's increased workload, and the reasons for it. The letter explains Plaintiff's strategies for keeping her increased workload up-to-date: working longer hours, taking shorter breaks, delaying or postponing medical appointments and vacation days, taking work home. The letter includes an admission that Plaintiff's job was "backed up." ("Obviously I was unable to keep up or maintain.") In the letter, Plaintiff also states that the absence of inventory was not due to her job performance, but due to other external factors beyond Plaintiff's control, and caused an increase to Plaintiff's workload due to back orders, time spent on the telephone with customers, as well as investigation into what was on order, what was scheduled to be manufactured, and when the product would be available. Plaintiff Loyle further states:

> "So I feel I am accountable for letting my
> job get so backed up. I do not accept
> responsibility for the backlog of orders or
> the absence of inventory."

After consideration of the undisputed evidence, the Court concludes that Defendant Mantua has proffered a legitimate non-discriminatory reason for the adverse employment action.

15

3. Pretext

A. General Principles

Once an employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the presumption of discrimination "drops from the case," and the plaintiff must demonstrate that the employer's proffered reason was not the true reason for the adverse employment action. A plaintiff may demonstrate pretext directly, by persuading the Court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence.

To establish pretext, a plaintiff must come forward with evidence, including previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The evidence offered must be "significantly probative" as to the issue of pretext. Mayfield v. Patterson Plumbing Co., 101 F.3d 1371, 1376 (11th Cir. 1996). A plaintiff's subjective opinion, "without supportive evidence, is not sufficient to establish pretext." See Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). A plaintiff cannot succeed in establishing pretext by simply quarreling with the wisdom of [her] employer's decision. Chapman, 229 F.3d at 1030. In Chapman, the Eleventh Circuit Court of Appeals states:

16

> Federal Courts do not sit as a super-
> personnel department that reexamines an
> entity's business decisions. No matter how
> medieval a firm's practice, no matter how
> high-handed its decisional process, no matter
> how mistaken a firm's managers, the...[law]
> does not interfere. Rather, our inquiry is
> limited to whether the employer gave an
> honest explanation of its behavior....[A]n
> employer may fire an employee for a good
> reason, a bad reason, a reason based on
> erroneous facts, or for no reason at all, as
> long as its action is not for a retaliatory
> reason.

Chapman, 229 F.3d at 1030.

B.  Plaintiff's Argument

Plaintiff Loyle argues that Plaintiff Loyle was fired despite the provisions of Defendant Mantua's employment manual, which include a series of written warnings before dismissal. Plaintiff Loyle denies receiving any written reprimands or warnings during her nine-year term of employment, and denies receiving counseling from Plant Manager Dubecky prior to being fired.

Plaintiff Loyle further argues that, at the time Plaintiff's employment was terminated, Plaintiff Loyle was performing as well as, if not better than, Plaintiff Loyle performed throughout her employment. Plaintiff Loyle states the testimony of every witness attests to that fact. Plaintiff Loyle argues that, at the time Plaintiff's employment was terminated, only five orders had not been entered, and the five orders were not entered because Plaintiff Loyle had been out sick for two days. Plaintiff Loyle further argues that order delays were caused by the following factors: 1) Defendant added a new product; 2)

17

Defendant had hired a new plant manager who was trying to "change the system"; 3) Plaintiff was training two new hires; 4) there were delays in production and the plant was out of inventory; 5) the "Guatemalan" order was a production delay, not an order entry delay; 6) Plaintiff Loyle was out for two days due to a knee injury just prior to Plaintiff's termination.

Plaintiff Loyle further relies on the following chronology of events to establish pretext: 1) two twenty-year-old women were hired to work in the office, doubling the office staff which had remained the same for over ten years; 2) the two young women were trained by two older women to do their jobs; 3) the plant manager stated that "Younger people are generally sharper. Older workers had too many aches and pains."; 3) the two older women were fired about two months later, even though they knew and performed their jobs better than the younger women; 4) Defendant, after hiring two young women and firing two older women, again had only two office staff working in the Tampa facility; 5) after the two older women were fired, Defendant's Plant Manager Dubecky began to aggressively sexually harass the two younger women by talking about oral sex, the size of the younger women's breasts or rear end, his first sexual experience, having "phone sex" in front of them, calling them late at night, and undressing until he was completely naked in front of the young women in his office.

## C. Discussion

In considering the evidence in the record taken as a whole, the Court draws all reasonable inferences in favor of the nonmoving party. The Court disregards all evidence favorable to the nonmoving party that the jury is not required to believe, and

considers evidence favoring the nonmovant as well as evidence supporting the moving party that is uncontradicted and unimpeached, to the extent that it comes from disinterested witnesses. However, the Court may not make credibility determinations or weigh the evidence.

A plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision should not be believed. It is not necessary for a plaintiff to prove that the articulated reason for the adverse employment action is false.

C.  Pattern of Firing Older Workers and Replacing Them With Younger Workers

Plaintiff Loyle relies on the above chronology of events to establish pretext. Plaintiff Loyle's theory is that Defendant Mantua Manufacturing Company had a plan to get rid of older employees in order to substitute preferred younger employees.

In Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1362 (11th Cir. 1999), the Eleventh Circuit Court of Appeals found that a pattern of replacing or demoting four older, experienced store managers, out of a total of seven store managers, within a one year period, by the same supervisor, constituted probative circumstantial evidence of age discrimination.

For purposes of this Motion, the Court considers Edward Weintraub, CEO, and Plant Manager Frank Dubecky to be decision-makers as to the adverse employment action. Edward Weintraub testified that hiring and firing were within the scope of the duties delegated to the Plant Manager. Frank Dubecky proposed termination to Edward Weintraub as the appropriate discipline, and Edward Weintraub approved the recommendation. It was Plant Manager Frank Dubecky's perception that Plaintiff Loyle's order entry caused ongoing customer complaints, which prompted Frank Dubecky to consult with Edward Weintraub as to the termination of Plaintiff Loyle's employment. Edward Weintraub testified that he relied on Frank Dubecky's discussion and Megan Boles' confirmation of Frank Dubecky's facts.

Plaintiff Loyle has produced evidence which strongly challenges the credibility of Frank Dubecky (Dkt. 41-1). Where a plaintiff's evidence is strong enough to allow a factfinder to conclude that the employer lacks all credibility, summary judgment may be inappropriate. See Alexander v. Chattahoochee Valley Community College, 325 F.Supp.2d 1274 (M.D. Ala. 2004)(citing Chapman v. AI Transport, 229 F.3d 1012 (11th Cir. 2000)(en banc).

D. Other Factors Establishing Pretext

Plaintiff Loyle relies on evidence of her age, her favorable work history, and the fact that Defendant Mantua Manufacturing Company did not comply with Defendant's own employment policies to establish pretext.

Defendant's Employment Handbook includes various "work rules." (Dkt. 32-2). Violation of work rules triggers disciplinary action. According to the Handbook, violation of "Type A" work rules will be met with "progressive discipline." One "Type A" work rule is: "Work below acceptable levels of performance, failure to meet production requirements or standards."

The "work rule" defense is arguably pretextual when a plaintiff submits evidence: (1) that she did not violate the cited work rule; or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 (11th Cir. 1999).

The lack of formal complaints in a personnel file may support, but does not itself establish, a finding of pretext. Wascura v. City of South Miami, 257 F.3d 1238 (11th Cir. 2001). Different supervisors may impose different standards of behavior; a new supervisor may decide to enforce policies that a previous supervisor did not consider important. Mitchell v. USBI Co., 186 F.3d 1352, 1355-56 (11th Cir. 1999).

Deviation from a policy or procedure may be evidence of pretext, if the deviation occurs in a discriminatory manner. Brown v. American Honda Motor Co., Inc., 939 F.2d 946 (11th Cir. 1991). In this case, Defendant's Employment Handbook provides for progressive discipline as to "Type A" work rules. Frank Dubecky testified that he verbally counseled Plaintiff Loyle, and issued a written reprimand. However, Defendant did not produce the alleged written reprimand. This raises the possibility that

21

there was, in fact, no formal reprimand. It is possible that Frank Dubecky's testimony is an after-the-fact attempt to justify the employment decision which adversely affected Plaintiff Loyle. As noted above, Plaintiff Loyle has brought forth evidence that strongly challenges the credibility of Frank Dubecky. For purposes of this motion, the Court will assume that no verbal or written reprimands were given.

At the time of the adverse employment action, there were only two full-time office employees, and both were within the protected class. The Court notes that after Frank Dubecky expressed his disappointment with Annette Miller's attitude to Edward Weintraub, Edward Weintraub had a one-to-one conversation with Annette Miller that emphasized Defendant's expectations of Annette Miller. After Frank Dubecky complained to Edward Weintraub that Annette Miller's conduct did not change, Edward Weintraub approved Frank Dubecky's decision to terminate Annette Miller's employment. In Annette Miller's situation, Defendant Mantua complied with the guidelines in the Handbook. The Court further notes that there is testimony that Megan Boles violated work rules but was not subjected to discipline. Although Megan Boles performed the same work as Plaintiff Loyle, it is not clear that Megan Boles should be considered a comparator. Megan Boles was hired to work part-time, with the understanding that Megan Boles was attending school.

A subjective reason for an adverse employment action is a legally sufficient, legitimate nondiscriminatory reason if a defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. See Chapman v. AI Transport, 229 F.3d 1012 (11th Cir. 2000). It may be that

Plant Manager Frank Dubecky honestly believed that Plaintiff Loyle's alleged "habitual late order entry" created Defendant's order delays, and that the termination of Plaintiff's employment was appropriate. The problem is that there is a strong challenge to the credibility of the decision-maker. It is not the wisdom or accuracy of Defendant's conclusion that Plaintiff Loyle was an unsatisfactory employee [that is at issue], but the honesty of that conclusion. Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). The ultimate issue that Plaintiff must prove is whether Defendant Mantua terminated Plaintiff's employment because of Plaintiff's age and because Defendant Mantua wanted to hire the younger Keller and Boles to replace Plaintiff Loyle and Annette Miller.

After consideration of the record as a whole, and for the reasons stated above, the Court concludes that Plaintiff Loyle has produced sufficient evidence upon which a reasonable factfinder could conclude that Defendant's reason for the adverse employment action should not be believed. The Court therefore denies Defendant's Motion for Summary Judgment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **denied.**

Case No. 8:08-CV-169-T-17AEP

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 25th day of January, 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record